IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAGDISH C. LAUL,

    Plaintiff,

v.                                                                                      CIV 16-1386 MV/JHR

LOS ALAMOS NATIONAL SECURITY,
LLC,

    Defendant.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Plaintiff's Motion to Remand (*Doc. 15*) was referred to the undersigned "to perform any legal analysis required to recommend to the District Court an ultimate disposition" of the Motion. *Doc. 27* (Order of Reference). Having considered the parties' positions and all pertinent authority, the Court recommends that Plaintiff's Motion to Remand be granted.

**I)    BACKGROUND**

Plaintiff initiated this action by filing his "Complaint for Retaliation" in the First Judicial District Court, County of Los Alamos, State of New Mexico, on October 26, 2016. *See Doc. 1-2*. In said Complaint, Plaintiff alleges that he was employed by Defendant from 1999 through 2013. *Id.* at 2. In addition to this relationship, Plaintiff leased two buildings to Defendant from 2002 through 2016. *Id.* at 1-2. The lease was extended twice. *Id.* at 2. However, Defendant informed Plaintiff that it would not renew the lease after Plaintiff was terminated and filed complaints against Defendant with the New Mexico Human Rights Bureau, ultimately leading to a lawsuit. *Id.* at 3. Premised upon these facts, Plaintiff asserts claims for retaliation under the New Mexico Human Rights Act and breach of the lease agreement. *Id.* at 3-4.

Defendant removed the case to this Court on December 21, 2016. *See Doc. 1*. As grounds for removal, Defendant asserted that "Plaintiff's action arises, in large part, out of alleged violations of a lease contract between the parties, which provides that the contract shall be construed and interpreted according to the federal common law[.]" *Id.* at 1. The choice of law provision in this case states:

> This Lease will be governed by federal law as provided in this paragraph. Irrespective of the place of award, execution, or performance, this Lease will be construed and interpreted, and its validity determined, according to the federal common law of government contracts as enunciated and applied to prime government contracts by the federal boards of contract appeals and federal courts having appellate jurisdiction over their decisions rendered pursuant to the Contract Disputes Act of 1978. The Federal Arbitration Act, other federal statutes, and federal rules will govern as applicable. To the extent that federal common law of contracts is not dispositive, the laws of the State of New Mexico will apply.

*Doc. 15-1* at 4.

This Court, the Honorable William P. Lynch presiding, issued an Order to Cure Defects on December 21, 2016, finding that "the Notice fails to allege how the civil action arises 'under the Constitution, laws, or treaties of the United States,' or to cite any authority suggesting that the parties can stipulate to federal jurisdiction merely by contracting for federal common law to govern disputes." *Doc. 4* at 2. Defendant responded on December 28, 2016, clarifying the basis of removal. *See Doc. 6*. Defendant's amended notice takes the position that Plaintiff's claims implicate national security concerns, and "that federal question jurisdiction may arise from the terms of a lease agreement wherein the parties have agreed that federal law will govern any disputes concerning the lease." *Id.* at 3 (citing *Tenneco Oil Co. v. The Sac & Fox Tribe of Indians of Okla.*, 725 F.2d 572, 575 (10th Cir. 1984)). Defendant further asserted that "[a] number of federal district courts have similarly held that contractual choice of law provisions

that provide that federal law will govern disputes arising under such contracts is sufficient to confer federal question jurisdiction." *Id.*

Plaintiff now moves the Court to remand the case to state court. Plaintiff argues that the lease agreement is not a "government contract," that national security interests are not implicated here because the lease was for "Office and Storage space," and that "a choice of law provision where parties stipulate to federal jurisdiction is not sufficient on its own to permit a (sic) federal question jurisdiction." *See Doc. 15* at 2-3; *Doc. 20* at 2. In Response, Defendant reiterates its position that the lease's choice of law provision designates federal common law, conferring federal jurisdiction in this case. *Doc. 17* at 3-6.[1]

## II) LEGAL STANDARDS

"Title 28 U.S.C. § 1331 vests in federal district courts 'original jurisdiction' over 'all civil actions arising under the Constitution, laws, or treaties of the United States." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689 (2006). "A case that is filed in state court may be removed from state to federal court at the election of the defendant, but only if it is one 'of which the district courts of the United States have original jurisdiction,' which is to say if federal subject-matter jurisdiction would exist over the claim." *Hansen v. Harper Excavating,*

---

[1] The parties also debate whether the choice of law provision is ambiguous in light of the "nature of the lease" provision. This section states:

> This lease is not a Government contract and, therefore, is not subject to the Contract Disputes Act of 1978 (41 U.S.C. §§ 601-613). LESSOR acknowledges that the GOVERNMENT is not a party to this Lease, and, for the purposes of this Lease LESSEE is not an agent of the GOVERNMENT. Consequently, the provision for arbitration by the Board, as provided for in this clause, does not create or imply the existence of privity of contract between LESSOR and the GOVERNMENT.

Doc. 15-1 at 3. "The question of whether an agreement contains an ambiguity is a matter of law." *Gallup Med Flight, LLC v. Builders Trust of New Mexico*, 240 F. Supp. 3d 1161, 1219 (D.N.M. 2017) (Browning, J.) (citations omitted). The Court agrees with Defendant that this section of the Lease does not render the choice of law ambiguous. Rather, as Defendant argues, "the Lease unambiguously provides that the parties are not subject to jurisdictional and administrative provisions of the CDA" while "further unambiguously provid[ing] in the Choice of Law provision that the source of substantive law to be applied to disputes arising under the Lease is the federal common law of government contracts[.]" *Doc. 17* at 8.

3

*Inc.*, 641 F.3d 1216, 1220 (10th Cir. 2011) (quoting 28 U.S.C. § 1441(a)). Defendant, as the removing party, bears the burden of establishing federal jurisdiction. *See Gonzales v. Ever-Ready Oil, Inc.*, 636 F. Supp. 2d 1187, 1189 (D.N.M. 2008) (Parker, J.) (citations omitted). "Federal courts are courts of limited jurisdiction; thus, there is a presumption against removal jurisdiction, which the defendant seeking removal must overcome." *Gallup Med Flight, LLC v. Builders Trust of New Mexico*, 240 F. Supp. 3d 1161, 1210 (D.N.M. 2017) (Browning, J.) (citations omitted).

"[F]ederal subject matter jurisdiction cannot be created by agreement or consent of the parties." *Becker v. Ute Indian Tribe of the Uintah and Ouray Reservation*, 770 F.3d 944, 946 n.1 (10th Cir. 2014) (citing *Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1022 (10th Cir. 2012) ("Federal subject matter jurisdiction is elemental. It cannot be consented to or waived, and its presence must be established in every cause under review in the federal courts.")). Diversity of citizenship can open the door to a federal forum. *See* 28 U.S.C. § 1332. However, here, the parties are not diverse. "Therefore, if federal subject matter jurisdiction exists, it must arise under a law of the United States." *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (citing 28 U.S.C. § 1331). "[I]t takes more than a federal element to open the 'arising under' door." *Empire*, 547 U.S. at 701 (citing *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005)). Federal question jurisdiction exists "when the cause of action is created by federal law or turns on a substantial question of federal law." *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994). "Consequently, federal jurisdiction will lie only if resolution of [a] breach of contract claim requires resolution of a substantial question of federal law." *Id.*; *see also Gilmore v. Weatherford*, 694 F.3d 1160, 1170 (10th Cir. 2012) (quoting *Empire*, 547 U.S. at 690).

"[B]eyond the requirement of a 'substantial' question of federal law at the heart of the case, the federal question must be 'actually disputed,' and its resolution must be necessary to the resolution of the case." *Gallup Med Flight*, 240 F. Supp. 3d at 1210 (citing *Grable & Sons*, 545 U.S. at 314). "Finally, the exercise of federal jurisdiction must also be 'consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331.'" *Id.* (quoting *Grable & Sons*, 545 U.S. at 313–14).

**III) ANALYSIS**

This case involves a run-of-the-mill breach of contact between a subcontractor to the federal government and its landlord. While the parties to the lease agree that it is bound by federal common law, it is well settled that the parties cannot stipulate to federal jurisdiction where it is lacking. Yet that is Defendant's primary argument, with smatterings of national security implications asserted therewith. However, the mere fact that national security *may* be implicated is not enough to transform the state-based issues in this case into federal ones, especially where the lease at issue is not a government contract and Defendant has provided no evidence that the United States is exposed to some potential loss. Defendant has not demonstrated any issue of federal law that must be resolved for the resolution of this case, and the Court finds that Congress did not intend to burden the federal courts with contractual disputes between members of the same state. As such, the Court recommends that this case be remanded to state court.

In opposing this view, Defendant relies primarily upon *Tenneco Oil Co. v. The Sac & Fox Tribe of Indians of Okla.*, 725 F.2d 572, 575 (10th Cir. 1984). There, the Tenth Circuit found federal jurisdiction existed over an oil and gas lease because the tribe's sovereign immunity was asserted, federal common law was invoked by the plaintiff, and because the lease expressly

provided that it was made and accepted subject to existing federal law. *See id.* at 575-76. Obviously, Defendant relies upon the third of these reasons. *See id.* at 576 ("Clearly, both parties intended that the structure of federal law be the final arbitrator in all disputes concerning the lease. We hold that federal jurisdiction is present.").

Plaintiff argues that *Tenneco Oil* is distinguishable insofar as this case involves no substantial federal interest because "the premises identified in the lease agreement is not a secured area and not on federal property." *See Doc. 15* at 4-5; *see also Doc. 20* at 3 (arguing that *Tenneco Oil* "dealt with arguments of sovereign immunity for contractual disputes over Indian oil and gas leases on Indian land. Here, the lease at issue is Plaintiff's private property that was not conferred to him by congress."). In light of the above-stated principle that parties cannot consent to federal jurisdiction, the Court agrees the *Tenneco Oil* is distinguishable from the present matter.

The Tenth Circuit recently distinguished *Tenneco Oil* in a case involving almost identical facts – the presence of a contractual dispute implicating: "(1) whether the contract required approval by the United States Secretary of the Interior . . .; (2) whether the contract was a valid 'Minerals Agreement' under the Indian Mineral Development Act . . .; (3) whether the Tribe could invoke sovereign immunity; and (4) whether the Tribe had agreed to submit to the district court's jurisdiction." *See Becker v. Ute Indian Tribe of the Uintah and Ouray Reservation*, 770 F.3d 944, 946 (10th Cir. 2014). The court completely discarded of the plaintiff's assertion "that the Tribe agreed to submit to the district court's jurisdiction…. [Because] [e]ven if true, such an agreement is beside the point. . . ." *Id.* at 948 n.1. It further reasoned that the plaintiff's federal issues were "merely federal defenses, which do not give rise to federal jurisdiction under 28 U.S.C. § 1331." *Id.* at 948. Although tribal sovereign immunity was implicated, the court

recognized that, since *Tenneco Oil*, "the Supreme Court has singled out tribal sovereign immunity as a type of federal defense that 'does not convert a suit otherwise arising under state law into one which, in the § 1331 sense, arises under federal law.'" *Id.* (quoting *Okla. Tax Comm'n v. Graham*, 489 U.S. 838, 841 (1989)). The court then distinguished *Tenneco Oil* on the basis that, in that case, the suit challenged "the validity of an exercise of tribal power in cancelling plaintiff's lease," whereas in *Becker*, the complaint did "not assert that the Tribe has wronged him through an illegitimate exercise of tribal power. Rather, Becker's complaint asserts that the Tribe violated the terms of a contract[.]" *Id.* at n. 2.

Moreover, *Tenneco Oil* is over 30 years old, and recent precedent establishes that federal question jurisdiction should not lie where the federal issue is "merely present" and has no bearing on the underlying contract dispute. *See Gallup Med Flight, LLC v. Builders Trust of New Mexico*, 240 F. Supp. 3d 1161, 1229 (D.N.M. 2017) (Browning, J.). For example, Judge Browning found federal question jurisdiction lacking in *Gallup Med Flight*, even though the case involved the Federal Airline Act, which limits what the state of New Mexico can do to regulate the rates, routes, and schedules of air ambulance providers. *See id.*, at 1231. Pertinent here, the court was "not satisfied that a substantial federal question of law [was] at issue in the resolution of [that] contract dispute" because the Airline Act "does not stop air ambulance providers in New Mexico from contracting with workers' compensation insurance providers to ensure adequate ambulatory services." *Id.* As such, the court remanded the case back to New Mexico state court.

Defendant also cites *New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953, 954 (9th Cir. 1996), in support of federal jurisdiction. *See Doc. 17* at 5. However, Defendant makes clear that it cited to the case "simply to support its assertion that national security concerns are present in

7

this case." *Id.* This limited reliance on *New SD* is warranted, as it has been distinguished by other circuit courts to have addressed the issue. For example, in *Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc.*, 164 F.3d 123, 128 (2d Cir. 1999), the Second Circuit explicitly rejected the notion "that any contract that bears any relation to national security is governed by federal common law." *Id.* Instead, the court found persuasive the Seventh Circuit's reasoning "that a contractual dispute between two potential subcontractors on a government procurement contract does not implicate a uniquely federal interest unless the United States is exposed to some potential loss." *Id.* (citing *Northrop Corp. v. AIL Sys. Inc.*, 959 F.2d 1424, 1427 (7th Cir.1992)).

This leaves the district court cases that Defendant relies on, which, this Court notes, are neither binding nor particularly persuasive in light of the foregoing principles. In *World Sav. & Loan Ass'n. v. Fed. Home Loan Bank of San Francisco*, 2002 WL 1941155, at *3 (N.D. Cal. Aug. 19, 2002), the court was satisfied that it had jurisdiction over an underlying contract dispute which provided that federal common law governed. *Id.* However, it was also undisputed, and the Court found, that the United States had a "substantial interest in the contract[.]" *Id.* (citing *Danis Industries Corp. v. Fernald Environmental Restoration Management Corp.*, 947 F.Supp. 323, (S.D.Ohio 1996)). The reason for this finding is apparent if the case is examined closely, the plaintiff was "a federally-chartered savings and loan association and member/shareholder of the [defendant] Bank." *Id.* at *1.

*World Sav. & Loan* is inapplicable here. Neither party to the current dispute is federally chartered, and the parties' agreement makes clear that neither is an agent of the federal government. *See Doc. 15-1* at 3. As such, the United States has no similar "substantial interest" in the contract at issue, which was merely a lease for office space.

Defendant also relies on *Danis Industries Corp. v. Fernald Environmental Restoration Management Corp.*, 947 F.Supp. 323 (S.D. Ohio 1996). However, the court in *Danis Industries* understood that the parties could not confer subject matter jurisdiction solely by agreement in the choice of law provision. *Id.* at 327. It required a second showing: that the United States have a substantial interest in the contract being litigated. *Id.* at 328. The Court, having already determined that Defendant has not demonstrated any issue of federal law that must be resolved for resolution of this case, finds that the United States does not have a substantial interest in the contract at issue here.

IV) **CONCLUSION**

In sum, the Court concludes that Defendant, as the removing party, has failed to bear its burden of establishing federal jurisdiction. As such, this Court recommends that Plaintiff's Motion to Remand (*Doc. 15*) be granted, and that this case be remanded to state court.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).

**A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE